STATE OF MAINE                                        SUPERIOR COURT
AROOSTOOK, ss                                         DOCKET NO. CR-13-137

STATE OF MAINE                     )
                                   )
                                   )
                                   )
vs                                 )          ORDER ON DR. FLOMENBAUM
                                   )          MOTIONS IN LIMINE
                                   )
                                   )
MATTHEW DAVIS                      )
                    Defendant      )

Pending before the court are two motions in limine that the State has filed pertaining to

the Chief Medical Examiner for the State of Maine, Dr. Mark Flomenbaum[1]. The State seeks a

pretrial Order from the court addressing three aspects of Dr. Flomenbaum's possible testimony.

In its first Motion in Limine pertaining to Dr. Flomenbaum, the State seeks an Order

from the court prohibiting the Defendant from cross- examining Dr. Flomenbaum regarding the

circumstances of his separation from employment for the Commonwealth of Massachusetts. It

appears that Dr. Flomenbaum was employed as the Chief Medical Examiner for Massachusetts

for two years and was responsible for managing the Office of the Chief Medical Examiner

(OCME) in that state. It also appears that he was discharged before the expiration of his term

"for cause."[2] The State contends that such evidence is neither material nor relevant to this case

and that its introduction ought to be excluded by M.R.Evid. 403 because its probative value is

---

[1] The court notes that hearing of this motion was conducted by telephone conference and no record was created. The court anticipated that the parties would be relying upon their respective written submissions and scheduled the telephone conference to afford each party the opportunity to supplement, if they chose to do so, the arguments set forth in their memorandum. Although the court extended the invitation to continue the matter so that a record might be created if one was desired, neither party asked that the court do so. The court proceeded to listen to the respective arguments of counsel by telephone. Neither party presented anything that was not already included within their respective written submissions.

[2] The court's background information is derived from the case of Flomenbaum v. Commonwealth, 451 Mass. 740 (2008) and from the transcript of testimony provided from the cases of *State of Connecticut v Carroll Bumgarner-Ramos*, NO: WWM-CR13-0151026-T.

1

outweighed by the danger of confusing the issues, or misleading the jury. The Defendant objects to the motion and relying upon M.R.Evid. 608 (b) points to references to a "lack of candor"[3] and a "failure to communicate fully and frankly"[4] with his superiors for support of his contention that there were specific instances of conduct during Dr. Flomenbaum's employment in Massachusetts about which he should be permitted to make inquiry.

The Defendant also points to the following exchange between Dr. Flomenbaum and the defense attorney in State of Connecticut v. Carroll Bumgarner-Ramos (See transcript of proceedings submitted as Defendant's Exhibit 3, page 133):

Q    [How long were you at the OCME]

A    Two years.

Q    Two?

A    Two years.

Q    Two years before they fired you?

A    No. Two years before I left.

Q    Well, didn't the state of Massachusetts terminate you, Doctor?

A    The governor did. Yes, he did.

Ordinarily in addressing motions in limine, particularly motions based upon M.R.Evid. 403 considerations, the better practice is to await the development of an evidentiary context before ruling on such motions. (See State v. Brackett, 2000 ME 54, ¶ 7, 754 A.2d 337,339) It is often possible for the evidence at trial to develop in ways that may not have been anticipated and consequently new or different issues may arise and as a result certain evidence may become more or less relevant. In such cases, the calculus of M.R.Evid. 403 rulings made in advance of

---

[3] See Flomenbaum v Commonwealth, 451 Mass 740,744.
[4] Id at 750

2

trial can change. However, in other cases changes to the evidentiary mix are unlikely, paraticularly where the essential facts are likely to be established without dispute. In these cases, motions in limine can safely be addressed in advance of trial, thereby promoting greater efficiency in conducting the trial proceedings. This is such a case.

That Dr. Flomenbaum was discharged from his position as Chief Medical Examiner for the Commonwealth of Massachusetts is undisputed. From the materials provided the court in connection with this motion it is clear to this court that Dr. Flomenbaum's duties in Massachusetts were entirely administrative and not clinical.[5] It is also clear that Dr. Flomenbaum and his employer had significant disagreements regarding the terms of Dr. Flomenbaum's initial engagement. The parties had signed a letter that embodied the terms on which Dr. Flomenbaum accepted his position in Massachusetts. It appears that the OCME was not functioning in an optimum manner, in particular, there were substantial backlogs in conducting autopsies. There were also other issues regarding the performance of other related duties for which that office was responsible. The letter suggested that the Commonwealth of Massachusetts had committed to supporting Dr.Flomenbaum's requested changes in the OCME in that state. These changes included increasing the number of medical examiners, developing a comprehensive medicolegal investigation system, seeking accreditation under national standards, improving or replacing medical examiner facilities. The purpose of the changes was to reform the OCME and to restore its integrity and professional reputation. The letter reflects that the parties anticipated that the process would take approximately three to five years. Dr. Flomenbaum was discharged two years into this process.

---

[5] He testified in State of Connecticut v Carroll Bumgarner-Ramos that he did "zero" autopsies in Massachusetts and that he did them full time in Maine. See Defense Exhibit 3, page 133.

3

Dr. Flomenbaum brought suit in Massachusetts for breach of contract and seeking reinstatement to his position. That state's supreme court ultimately concluded that there were sufficient problems associated with Dr.Flomenbaum's performance of his administrative and managerial duties associated with a backlog of bodies awaiting autopsies (additionally, in one case, a body went missing for a period of time) that the "just cause" standard had been satisfied and it fell within the governor's discretionary authority to discharge Dr. Flomenbaum for cause, notwithstanding that there had been no question raised regarding Dr. Flomenbaum's excellent reputation as a pathologist.

In this court's view, the reasons for Dr. Flomenbaum's termination of employment in Massachusetts are neither material nor relevant to the issues presented in this case. Moreover, to permit the exploration of the circumstances of Dr. Flomenbaum's termination from employment in the pending case simply presents too great a risk that the trial proceedings would become bogged down in rehashing the circumstances surrounding Dr. Flomenbaum's discharge from his administrative position in Massachusetts with a resulting waste of time in a case that all parties suggest will take several weeks to conduct and that may prove difficult to conclude within the allotted time. If such an attack on Dr. Flomenbaum's character were permitted, the court would be obliged to allow the State an opportunity to rehabilitate its witness and it is not difficult to imagine the "back and forth" exchanges that could ensue with very little light being shed on the central issues in this case. The court concludes that conducting such an examination would risk having the present trial descend into a quagmire of conflicting interpretations of evidence in a completely unrelated matter from the State of Massachusetts. In this court's view, it would be a significant waste of time and would carry with it the risk of focusing the jury's attention on

completely unrelated matters and distracting them from what ought to be their principal foci of attention.

The law court has previously indicated that it is within the trial court's discretion to disallow inquiry into the circumstances of a police officer's subsequent termination of employment in an Operating Under the Influence case. (See State v. Bisson, 491 A.2d 544, 549 (Me. 1985)) Accordingly, the court exercises its discretion pursuant to M.R.Evid. 403 and 608(b) and grants the State's motion foreclosing inquiry into the circumstances of Dr. Flomenbaum's termination from employment in Massachusetts.

Similarly, the court does not find the very brief semantic bantering between a defense attorney and Dr. Flomenbaum regarding the characterization of his separation from employment to be a "specific instance of conduct" that would be probative of Dr. Flomenbaum's character for truthfulness. The court forecloses inquiry pertaining to that exchange.

In its second motion in limine, the State anticipates that if Dr. Flomenbaum testifies at trial, that the Defendant will cross examine him and seek to impeach his testimony by introducing evidence related to trial proceedings conducted in Connecticut. In May of 2016, Dr. Flomenbaum testified as an expert witness on behalf of a defendant charged with several criminal offenses including a charge of manslaughter arising out of the death of a child in that defendant's care. The prosecution expert testified that the child had died from blunt force trauma; Dr.Flomenbaum testified that in his opinion, the child had died of natural causes. The Connecticut justice conducting the jury waived trial issued findings of fact and conclusions of law in making her decision. In rendering that decision, the justice stated, "The defendant's expert, Dr. Mark Flomenbaum, testified that [protected person]'s death was as a result of natural causes. The Court finds this testimony not credible and rejects Flomenbaum's conclusions. All the

credible evidence points unalterably to the fact that [protected person]'s death was due to blunt abdominal trauma caused by the defendant." [6]

The Defendant objects to the motion and confirms that it is his intention to seek to introduce evidence that in connection with another unrelated proceeding, the presiding justice found that Dr. Flomenbaum's testimony was not "credible".

This court is not persuaded that such evidence should be admitted in this case. Aside from the question of whether such evidence would be hearsay falling outside of any recognized exception within M.R.Evid. 803 or M.R.Evid. 804, Maine case law is clear that questions of witness credibility are for the fact finder to determine. State v. Caulk, 543 A.2d 1366, 1372 (Me. 1988)

Even if the case law were not so clear, as this court reads the Connecticut justice's findings, it appears that the trial court was not making a determination that implicated Dr. Flomenbaum's personal character for truth or veracity but rather, she made a finding that she did not find the doctor's opinion regarding the cause of a minor child's death to be persuasive. Whether that opinion was based on a conclusion that Dr. Flomenbaum lacked the requisite training, education or experience to render his opinion, whether the reasons given in support of the opinion were not sound or were not supported by the evidence presented at trial, whether she made her determination simply by the observations she made of the doctor while he testified on the stand or whether she believed the doctor was lying cannot be known.

This court is not persuaded that United States v. Cedeno, 644 F.3d 79 (2d Cir. 2011) governs the issue. Assuming, without conceding, that *Cedeno* ought to trump *Caulk*, it seems to this court that the two cases are distinguishable. In *Cedeno*, it seems clear that there was a prior

---

[6] See page 16 line 25 in the excerpt from State of Connecticut v. Carroll Bumgarner-Ramos, No: WWM-CR13-0151026-T submitted as Defendant's Exhibit 4 in support of his objection to the State's motion.

finding that a witness had actually lied in an earlier case and this determination was directly probative of the witness' character for truthfulness. This court is not persuaded that in the single brief sentence to which the Defendant points, that the Connecticut trial judge made a finding regarding Dr. Flomenbaum's character for truthfulness. When one reads the very next sentence in the court's decision, it seems clear that the Connecticut trial judge was addressing the relative strengths/weaknesses of the evidence supporting or not supporting the conflicting expert opinions and was not making any finding about the character for truthfulness of the witnesses presenting that evidence.

Accordingly, the court grants this motion and will prohibit the Defendant from introducing any evidence associated with or arising out of the Connecticut trial court's finding in State of Connecticut v. Carroll Bumgarner-Ramos

The entry shall be: The State's Motion in Limine and its Second Motion in Limine regarding Dr. Mark Flomenbaum is granted.

Date: August 29, 2016

_____
E. Allen Hunter
Active Retired Justice of the Superior Court

7

STATE OF MAINE                                          SUPERIOR COURT
AROOSTOOK, ss                                          DOCKET NO. CR-13-137


STATE OF MAINE                    )
                                  )
                                  )
                                  )
vs                                )              ORDER ON JENNIFER SABEAN
                                  )              MOTIONS IN LIMINE
                                  )
                                  )
                                  )
MATTHEW DAVIS                     )
                  Defendant       )

Pending before the court is the State's Motion in Limine pertaining to Maine State Police Crime Laboratory DNA Analyst Jennifer Sabean[1]. The State seeks an Order from the Court prohibiting the Defendant from cross-examining Ms. Sabean regarding the performance of her duties in connection with State v. Claridge (Washington County Docket No. 06-347 *(Hunter, J.)*). In that matter certain laboratory errors occurred but were not disclosed to the defendant prior to trial. For that reason, this court granted the Defendant a new trial.

The court denies the State's motion and will permit the parties a reasonable amount of examination and/or cross-examination pertaining to that remote matter.

The court anticipates that in support of its case against the Defendant, the prosecution will call Ms. Sabean to offer expert testimony regarding the DNA testing that the laboratory performed in this case. The court recognizes that such scientific evidence can have a significant impact upon jurors and therefore, the Defendant should have the opportunity to challenge that evidence and to challenge the expertise and the actual performance of the person undertaking the testing. In *Claridge*, mistakes were made. It seems to the court that it would be relevant to point out to the jury that even the most modern and sophisticated testing known to modern science is still susceptible to human error.

In the court's view, *Claridge* does not present a true M.R.Evid. 608(b) question. The court granted Mr. Claridge a new trial based on a discovery violation. The court did not grant the new trial because it felt that Mr. Claridge was deprived of an adequate opportunity to challenge the veracity of Ms. Sabean. It granted the new trial because Mr. Claridge had not been provided with important information pertaining to significant scientific evidence in his trial.

The court recognizes the State's concern that permitting inquiry into "ancient history" has the potential to contribute to a waste of time and confusion of the issues. The court has today addressed similar concerns in connection with the State's other motion in limine relating to the State's medical examiner, Dr. Mark Flomenbaum. It seems to the court that Ms. Sabean presents

---

[1] The court is not addressing the question of whether the State has fully complied with the court's discovery order pertaining generally to DNA evidence and Ms. Sabean's testimony.

1

a different circumstance. The Commonwealth of Massachusetts was critical of Dr. Flomenbaum for his job performance in administering a department of government, an entirely different professional undertaking than performing autopsies. The court anticipates that Dr. Flomenbaum will testify regarding the autopsies that he performed upon the two decedents and not how well or how poorly he administered a government office in Massachusetts. The court anticipates that Ms.Sabean will testify about the DNA testing that she did in this case. Ms. Sabean was subjected to previous criticism directly related to her performance of DNA testing, the same professional responsibility that she has apparently undertaken in the pending case. It seems relevant and therefore fair for the Defendant to point out that Ms. Sabean has made previous mistakes.

        Accordingly, the State's motion is denied.

August 29, 2016

E. Allen Hunter
Active Retired Justice of the Superior Court

2